IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Oliver Lee Hurley, | ) | No. CV 03-1285-PCT-SRB (HCE) |
| | ) | |
| Petitioner, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| William Gaspar, et. al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Nancy Fiora.  On July 9, 2005, this matter was referred to the undersigned Magistrate Judge in light of Magistrate Judge Fiora's retirement.

For the following reasons, the Magistrate Judge recommends that the District Court deny the Petition.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  Petitioner's Conviction and Summary of the Case

Petitioner, Oliver Lee Hurley, was convicted by jury in Coconino County Superior Court, Arizona, of Manslaughter. (Petition, p.1; Answer, p.2) The Court sentenced Petitioner to seventeen years of imprisonment.  (Petition, p.1)

On the evening of January 21, 1998, Petitioner and his girlfriend, Lorena Frank[1] went to the Windy Mesa Bar in Page, Arizona, where they ordered a pitcher of beer and played pool. (Answer, Ex. C, pp. 12-15, 36-37) Later that evening, while Petitioner and his girlfriend were at the Windy Mesa Bar, the victim Kenneth Robbins arrived accompanied by two other men. (Answer, Ex. A, p.57-59)

That evening, Petitioner approached Mr. Robbins, who was sitting with some other people, tapped him on the shoulder from behind and began talking to him. (Id. at p. 61, 181)

Eventually, both men walked out of the bar together.  (Id. at p. 62) Witnesses saw Petitioner repeatedly hit Mr. Robbins.  He continued to do so after Mr. Robbins had fallen to the ground. (Id. at p.146; Answer, Ex. D, pp. 56-59) One witness also heard Petitioner kick Mr. Robbins. (Answer, Ex. A, pp. 142-144, 146)

Petitioner left Mr. Robbins, beaten beyond recognition, alone on the ground. (Answer, Ex. D, p. 60; Answer, Ex. A, pp. 64-65) Petitioner told his girlfriend that Mr. Robbins had sexually assaulted him in the past.  (Answer, Ex. D,  p. 71) Petitioner testified at trial that Mr. Robbins had sodomized him in April of 1995.  (Answer, Ex. K, p. 3) On January 21, 1998, just before the fight that resulted in Petitioner's conviction, Mr. Robbins had winked twice at Petitioner and smiled strangely at him while the men were still in the Windy Mesa Bar.  (Answer, Ex. C, pp. 3-18)

Mr. Robbins died on January 27, 1998.  (Answer,  Ex. B, p. 171)

Petitioner was charged with one count of aggravated assault and one count of second degree murder. (Answer, Ex. G, p.4) Petitioner also had three prior felony convictions.  (Id. at p. 8) Prior to trial, the trial court granted Petitioner's unopposed motion to dismiss the aggravated assault charge.  (Answer, p. 13 & Ex. H, pp. 56-57)  The jury found Petitioner guilty of the lesser-included offense of reckless manslaughter. (Answer, p.13 & Ex. I, p.4)

---

[1]The transcript of the trial refers to the witness as "Lorena Frank" and "Lorraine Crank."  (Answer, Ex. D, p. 36; Answer, Ex. C, p.65) A minute entry refers to her as "Lorraine Crane." (Answer, Ex. E, May 15, 1998 minute entry, p.2)

The jury also found that Petitioner had a prior felony conviction for aggravated assault. (Answer, p.13 & Ex. I, p. 30) Consequently, the trial court imposed an aggravated sentence of seventeen years in prison.  (Answer, p. 13 & Ex. J, p.18)

B.  Direct Appeal and Post-Conviction Proceedings

Petitioner, through counsel, appealed his conviction and sentence to the Arizona Court of Appeals and raised two issues:

1.     the trail court erred by giving a lesser-included offense instruction for reckless manslaughter; and

2.     the trial court was biased against Petitioner, as shown by the court's pre-trial discussion concerning the number of jurors required to be empaneled and by its finding of cruelty as an aggravating factor.

(Answer, Ex. K)

On February 24, 2000, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence.  (Answer, Ex. L[2]; Arizona Appellate Court decision)

Thereafter, Petitioner, through counsel, filed a Petition for Review with the Arizona Supreme Court.  (Answer, Ex. M) Petitioner raised one issue: "Is Reckless Manslaughter a lessor-included offense of Knowing Second Degree Murder."  (Id.)  On October 31, 2000, the Arizona Supreme Court denied review, without comment.  (Answer, Ex. N)

Petitioner, through counsel, filed a Petition for Post-conviction Relief in which he raised two issues:

1.     the trial record is inadequate and incomplete in that it did not properly record attorney objections to juror questions; and

---

[2]The appellate court opinion  attached to Respondents' Answer as Exhibit L only contains the odd-numbered pages.  The entire opinion retrieved from the appellate court's website is filed together with the instant Report and Recommendation.

> 2.     ineffective assistance of trial counsel in failing to create a record of objections to juror questions; in failing to  reasonably assess the likelihood of a guilty verdict; and in failing to properly advise Petitioner to take a proffered plea.

(Answer, Ex. O)   Petitioner also filed a Pro Per Supplemental Petition for Post-Conviction Relief in which he argued that trial counsel was ineffective because he failed to obtain all relevant documents, specifically the grand jury transcript.  (Answer, Ex. P)

The trial court denied relief in separate minute entries dated May 22, 2001 and August 6, 2002.  (Answer, Ex. Q, R) Petitioner concedes that he did not file a petition for review with the Arizona Court of Appeals.  (Petition, p.2)

C.  Petitioner's Petition for Writ of Habeas Corpus

On July 7, 2003, Petitioner filed the instant Petition for Writ of Habeas Corpus. Petitioner raises the following claims:

> 1.     "Conviction obtained by action of a petit jury which was unconstitutionally selected or impaneled (by [sic] the trial court acted as an advocate at trial and at sentencing)" (Petition, p.5);
>
> 2.     "Conviction obtained by a violation of the protection against double jeopardy (by the trial court erred [sic] in instructing the jury on reckless manslaughter on the facts presents [sic] here)" (Id. at p.6);
>
> 3.     Ineffective assistance of trial and appellate counsel, "throughout the procedure of my case was ineffective representation" (Id. at p.7); and
>
> 4.     Violation of the privilege against self incrimination, "...by telling the detaining officer 'why' I was in handcuffs."  (Id. at p.8)

On January 27, 2004, Respondents filed an Answer limited solely to a statute of limitations defense. On November 19, 2004, the Court ordered supplemental briefing in light of *Isley v. Arizona Dep't. of Corrections,* 383 F.3d 1054 (9th Cir. 2004) (decided after Respondents filed their January 2004 Answer and holding that tolling of the statute of limitations begins with the filing of the notice of post-conviction relief).  Respondents then

filed on December 22, 2004 the instant Answer. Respondents argue that Petitioner's claims 1, 2 and 4, and part of claim 3 are procedurally defaulted; the remaining portion of claim 3 fails to state a cognizable claim; and, alternatively, all claims lack merit.

## II. DISCUSSION

A. Standard: Exhaustion and Procedural Default

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him. 28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989). The exhaustion inquiry focuses on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court. *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999). Exhaustion generally requires that a prisoner give the state courts an opportunity to act on his claims before he presents those claims to a federal court. *Id.* A petitioner has not exhausted a claim for relief so long as the petitioner has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

A habeas petitioner may exhaust his claims in one of two ways. First, a claim is exhausted when no remedy remains available to the petitioner in state court. *See* 28 U.S.C. § 2254(b)(1)(A). Second, a claim is exhausted if there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365-366. *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (same). Mere similarity between a

claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at 365-366.

Furthermore, to fairly present a claim, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once a federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas petitions, other than those concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have been fairly presented to the Arizona Court of Appeals either on appeal of conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.[3] *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999), *cert. denied* 529 U.S. 1124 (2200).

In some instances a claim can be technically exhausted even though the state court did not address the merits. This situation is referred to as "procedural bar" or "procedural default." A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson,* 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* The procedural bar provides an independent and adequate state-law ground for the conviction and sentence and, thus, prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the claim in the state proceedings. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495 (1986); *Franklin,* 290 F.3d at 1231. Accordingly, the procedural default doctrine

---

[3]Respondents argue that *Baldwin* "necessarily implicitly overrules" *Swoopes* and, thus, to satisfy the exhaustion requirement Petitioner herein must present his claim to the Arizona Supreme Court. (Answer, p. 24 n. 7) The Court need not address this issue because, as discussed *infra* at section C, Petitioner failed to fairly present his claims to the Arizona Court of Appeals in the first instance.

prevents state prisoners from obtaining federal review by allowing the time to run on available state remedies and then rushing to federal court seeking review. *Coleman v. Thompson,* 501 U.S. 722, 731-732 (1991).

If a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[4] *See Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[5] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2.

In summary, failure to exhaust and procedural default are different concepts. *Franklin*, 290 F.3d at 1230-1231. Under both doctrines, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference between the two is that when a petitioner

---

[4]Although the Ninth Circuit recently suggested that under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver *see Cassett v. Stewart*, 406 F.3d 614 (9th Cir. 2005), *cert. denied,* __ U.S. __, 126 S.Ct. 1336 (2006), this Court need not address such waiver because it has not been affirmatively raised by Petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

[5]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

fails to exhaust, he may still be able to return to state court to present his claims there. *Id.* In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default...the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

B.  Standard: Review of Merits

Pursuant to the provisions of the AEDPA, the Court may grant a writ of habeas corpus only if the state court proceeding:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied* __ U.S. __, 126 S.Ct. 484 (2005).  Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins,* __ U.S. __, 126 S.Ct. 969 (2006).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Williams v. Taylor,* 529 U.S. 362, 413-414 (2000)).  Additionally, a state court's decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

contradicts the governing law set forth in' Supreme Court cases."[6] *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003) *cert. denied* 541 U.S. 1037 (2004) (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)).  "Whether a state court's interpretation of federal law is *contrary* to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts."  *Cordova,*  346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, " '[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark,* 331 F.3d at 1067) Under the "'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather that application must be objectively unreasonable.'" *Clark,* 331 F.3d at 1068 (quoting *Lockyer v. Andrade,* 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova,* 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court,  "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the

---

[6]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412...While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied."  *Clark,* 331 F.3d at 1069 (emphasis in original).

record." *Lambert,* 393 F.3d at 978; *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.), *cert. denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually  unreasonable.") Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective,...or that no finding was made by the state court at all." *Taylor,* 366 F.3d at 999 (citations omitted).  In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert,* 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000) (emphasis in original).  Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court."[7]  *Taylor,* 366 F.2d at 1000.  *See also* 28 U.S.C. section 2254(e).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact.  Such questions "receive similarly mixed review; the state

---

[7]Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct."  "The AEDPA spells out what this presumption means:  State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found  that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor,* 966 F.3d at 1000.

court's ultimate conclusion is reviewed under [section] 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded under [sections] 2254(d)(2) and (e)(1)."  *Lambert,* 393 F.3d at 978.

C.  Review of Petitioner's Claims

1.  Claim One: Biased trial court

Petitioner alleges that the trial court was not impartial, and thus, denied him his due process right to an impartial judge when it "guided the prosecution so that [Petitioner] would have an eight person jury, instead of a 12 person jury" and when the court found cruelty as an aggravating factor at sentencing.  (Petition, p. 5)

a.  Exhaustion and Procedural Default

Petitioner, through counsel, raised the issue of the trial court's alleged partiality in his brief filed on direct appeal which took issue with the trial court's discussion concerning the number of jurors and the finding of cruelty as an aggravating factor.  Petitioner's brief on this issue refers to "due process" in the following instances:

1.   in the "Issues Presented" section: "HAS APPELLANT BEEN DENIED DUE PROCESS OF LAW BY THE TRIAL COURT'S INVOLVEMENT IN THE PROSECUTION OF THE PRESENT CASE?" (Answer, Ex. K, p.6) (emphasis in original);

2.   in the caption of Petitioner's argument: "THE TRIAL COURT ACTED AS AN ADVOCATE AT TRIAL AND AT SENTENCING.  APPELLANT HAS BEEN DENIED DUE PROCESS OF LAW.  THE MATTER SHOULD BE REMANDED FOR A NEW TRIAL OR FOR A NEW SENTENCING BEFORE A NEW JUDGE"  (Id. at p.9) (emphasis in original); and

3.   in the conclusion to that argument: "Appellant was denied due process of law by the trial court's advocacy in the present case." (Id. at p. 10).

Additionally, Petitioner opened his argument with the following standard: "It is fundamental to our system of justice that a judge be impartial.  *State v. Brown,*" 602 P.2d 478 (Ariz. 1979).  (Id. at p.9)

A petitioner fairly presents a federal claim only if he alerts the state court that his claim rests on the federal Constitution.  *Fields v. Waddington,* 401 F.3d 1018, 1021 (9th Cir.) *cert. denied,* __ U.S. __, 126 S.Ct. 738 (2005).   Petitioner's mention of a denial of due process did little to apprise the state court of the federal nature of his claim given that "[m]ere 'general appeals to broad constitutional principles, such as due process, equal protection and the right to a fair trial,' do not establish exhaustion."  *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2005) (quoting *Hiivala v. Wood,* 195 F.3d 1098,1106 (9th Cir. 1999); *see also Fields,* 401 F.3d at 1021 (same).  Moreover, while citation to state court decisions may satisfy the exhaustion requirement, this is only so if the state case "engages in a federal constitutional analysis."  *Fields,* 401 F.3d at 1020-1021.  If the state case cited by the petitioner discusses both state and federal issues relevant to the petitioner's claim, the citation to that a case "must be accompanied by some clear indication that the case involves federal issues."  *Casey v. Moore,* 386 F.3d 896, 912 n.13 (9th Cir. 2004), *cert. denied,* __ U.S. __, 125 S.Ct. 2975 (2005).

Herein, a fair reading of Petitioner's appellate brief reveals that he cited *Brown* v. *State of Arizona* to support a state law claim as opposed to a federal claim concerning the trial court's alleged partiality.   The court in *Brown* did not engage in a federal constitutional analysis.  Instead, the state court cited to and relied on "the intent of our rules and statutes in the administration of justice that cases be tried by judges who are not biased or prejudiced."  *Brown,* 602 P.2d at 480-481.  The *Brown* court referenced a United States Supreme Court case, *Taylor v. Hayes,* 418 U.S. 488 (1974), in a string citation to support the general proposition that "[a] judge should avoid even the appearance of partiality."  *Brown,* 602 P.2d at 481.  Petitioner's citation to the *Brown* decision contained "no signal in the text of the brief that the petitioner raise[d] federal claims or relie[d] on state law cases that resolve

federal issues" and, thus, such citation was insufficient to fairly alert the Arizona appellate court to Petitioner's federal due process claim. *Casey,* 386 F.3d at 912 n.13.[8]   Moreover, Petitioner is now barred pursuant to Rule 32.2(a) of the Arizona Rules of Criminal Procedure from returning to state court. *See Coleman,* 501 U.S. at 732, 735 n.1. *See also Franklin*, 290 F.3d at 1230-1231 ("the procedural default rule barring consideration of a federal claim applies...if it is clear that the state court would hold the claim procedurally barred.") Petitioner also fails to show cause or prejudice for the default.

b.  Respondents' alternative argument on the merits

Respondents argue that "[p]rocedural default aside, the claim lacks merit." (Answer, p. 25) Pursuant to the AEDPA, the Court may deny the petition for writ of habeas corpus "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Respondents contend that the Arizona appellate decision was not an unreasonable application of clearly-established Supreme Court precedent and that judicial bias was not shown in either the trial court's discussion concerning the size of the jury or in its sentencing decision.

i.  The necessary number of jurors

The Arizona Constitution guarantees the right to a twelve-person jury if imprisonment for 30 or more years is authorized by law. *See State v. Pope,* 961 P.2d 1067, 1068 (Ariz. App. 1998).  The trial court herein requested counsel to file supplemental memoranda

---

[8]Respondents also argue that the claim is not exhausted because Petitioner omitted such claim from his Petition for Review filed with the Arizona Supreme Court.  It is not clear whether the appropriate brief to consider is Petitioner's brief filed with the appellate court or his Petition for Review filed before the state supreme court. *See Castillo,* 399 F.3d at 998 n.3 ("We assume without deciding that we look to [petitioner's] Arizona Court of Appeals brief to determine whether [petitioner] afforded Arizona a fair opportunity to address his federal due process claim.") Given that Petitioner failed to fairly present a federal claim at the appellate level this Court need not address the effect, if any, of the fact that Petitioner omitted the claim from his Petition for Review filed with the Arizona Supreme Court.

concerning the appropriate size of the jury.  (Answer, p. 25 & Ex. G, p. 55)  The prosecution argued that a twelve-person jury was required because conviction of manslaughter with two prior felony convictions, would result in exposing Petitioner to a maximum sentence of 35 years.  (Id.)

At a pretrial conference, defense counsel declined to take a position on whether a twelve-person jury was required because he did not want his comments to be construed as a waiver of Petitioner's right to a twelve-person jury.  (Answer, p. 26 & Ex. S, pp. 5-6)  Defense pointed out that if Petitioner were convicted of an offense punishable by 30 or more years, and a twelve-person jury was not empaneled, such conviction would be reversible error.  (Id.)

The trial court questioned whether non-dangerous prior felonies could be used to enhance a sentence on a dangerous crime.  (Id. at p. 8)  The trial court then stated:

> In addition to that, although I won't tell the State how to run their case, it's certainly always easier to convince 8 (eight) people than 12 (twelve) people. And the State can consider lowering the possible jeopardy to the defendant by dismissing one of the allegations of prior convictions or something to bring it under 30 years.  But that's up to them; it's their choice.

(Id. at pp. 8-9)

The prosecutor then moved to dismiss one of the prior felony allegations, thus making a sentence for more than 30 years impossible and rendering the charges triable to an eight-person jury. (Id. at pp. 9-10)  The trial court responded that it was inclined to grant the motion unless Petitioner was able to show authority demonstrating that he could insist on a twelve-person jury in such circumstance.  (Id. at pp. 10-11)  The trial court said it would make a ruling the following day.  (Id. at p. 11)

The following day, Petitioner filed a request for stay of proceedings for special action and a motion for change of judge.  (Answer, Ex. G, pp. 56-57)  He argued that the trial judge was biased and had given tactical advice to the prosecution that it was easier to obtain a conviction with an eight-person jury. (Id.)

The matter was heard by another judge who ruled "that the statements of [the trial judge] do not show a bias or prejudice such that Defendant cannot receive a fair trial" and that the trial judge's comments "did not constitute an abandonment of his role as a neutral tribunal." (Answer, Ex. E, May 12, 1998 Minute Entry at p.10) Petitioner's motion for a stay to file a petition for a special action was denied. (Id. at p. 11)

On the first day of trial back before the assigned trial judge, Petitioner's counsel renewed his motion for a stay so that he could file a special action. (Answer, Ex. U, pp. 2-3) The court denied the stay but pointed out that Petitioner could still proceed with the special action. (Id. at p.3) The court also raised the issue of the required number of jurors stating that "the Defense was given the opportunity to file a memorandum regarding the number of the jurors necessary in this case.[9] And quite frankly this is important to the Court because we don't have courtrooms here that are capable of handling this trial. And so we had made arrangements with another judge, a federal judge, to borrow their courtroom for a 12 man jury." (Id. at pp. 3-4) The trial court opined that dismissal of two of the allegations of prior felony convictions would result in a maximum sentence of 23.25 years which, in turn, would dispense with the need for a twelve-person jury. (Id. at pp. 4-8) After some discussion, the trial court made inquiry of defense counsel as follows:

> THE COURT:      Now what's your position on a 12 (twelve) man jury? Do you want 12(twelve)? Do you want 8 (eight)? If so, why? This is your opportunity to put anything on the record that you want?
> MR. GORMAN [Defense Counsel]:      Well, my position is I want a 12 (twelve) person jury. I think it's easier to convict someone with an 8 (eight) person jury than a 12 (twelve) person jury. I adopt the motion I filed this morning in support of that position. And I think Mr. Horlings [the prosecutor] is being assisted in creating a jury panel of 8 (eight) that will assist him in a conviction. And for that reason I ask for a 12 (twelve) person jury. I voice no opinion on the range of sentences that apply because it's irrelevant what my opinion is anyway on that issue.

(Id. at pp. 8-9)

---

[9]The defense did not file such a memorandum. (Answer, Ex. U, p. 6)

The trial court found that Petitioner cited no legal grounds to support empaneling a twelve-person jury; noted that it was in the prosecution's discretion to dismiss two of the allegations of prior convictions; and stated that "[c]ommon sense tells you that 8 (eight) jurors are easier to convince than 12 (twelve).  I have to agree with you there, Mr. Gorman." (Id. at p.9) The court then granted the prosecution's motion to dismiss the second and third allegations of priors.  (Id. at pp. 9-10) The court further stated:

> All right.  Judge Coker has ruled on the change of judge, and I won't get into that.  I will note, however, for the record that although Defense counsel is claiming some type of bias because of conversations about an 8 (eight) or 12 (twelve) man jury, the Court ruled very favorable to him just moments before that on another issue highly contested by the State. I can't please all the people all the time.
> And also the quotes that are in the Defense's motion about what the Court said don't necessarily match up with the transcript.  So, I'll let someone else determine that at a later time.

(Id. at pp. 10-11) The trial court ordered that the jury would consist of eight persons with two alternates.  (Id. at p.11)

ii.   Cruelty as an aggravating factor

At sentencing, the prosecution concurred with the recommendation in the presentence report that Petitioner be sentenced to the maximum penalty of 18.5 years of imprisonment. (Answer, p.28 & Ex. J, p.6, p.10) The prosecution conceded that the crime was not "especially heinous" but cited Petitioner's previous criminal record which consisted of 22 prior misdemeanor convictions and three prior felony convictions, stressing that 15 of the prior convictions were for some form of assault.  (Ex. J, pp. 6, 9-10) The prosecution argued that Petitioner's record "deserves the maximum penalty."  (Id. at p. 10)

The court found two aggravating factors: (1) Petitioner's criminal record, which it noted included numerous instances of combined alcohol and assault-related offenses and that Petitioner failed on previously imposed probation; and (2) cruelty in committing the crime. (Id. at pp. 12-14) With regard to the latter, the court stated:

> The probation officer has indicated that I should find an aggravating factor that your acts were heinous, cruel or depraved.  And, quite frankly, I don't know using a common sense standard, how this couldn't be considered to be at a

minimum of cruel. Although I guess there are crimes that are so heinous, cruel and depraved nowadays, that that standard has gotten so high that even what you did doesn't qualify under those three words of heinous, cruel or depraved.

> You certainly had this man down, punching him over and over again. He was totally helpless. I've seen the picture of his face. It looks terrible. How this cannot be considered to be cruel, I don't know. And I am going to find this as an aggravating factor.

> In other words, you committed this in a cruel or especially cruel manner. Whether that holds up on appeal, I don't know. But I can't see how this couldn't be considered to be a cruel crime.

(Id. at pp. 13-14) The court found one mitigating circumstance–that Petitioner was significantly impaired. (Id. at p. 15) However, the court also found this circumstance should not be accorded weight because of Petitioner's prior criminal activity while intoxicated. (Id.) The court also stated: "Weighing the aggravating and mitigating circumstances then, we're down to about one mitigating and one aggravating circumstances a piece." (Id. at p.16) The court declined to impose the maximum sentence, and instead imposed imprisonment for 17 years. (Id. at p.18) At the close of sentencing, the court stated:

> I am going to note for the record at this time that because of the amount of emphasis I have placed on the defendant's prior record, the sentence would have been the same as far as I'm concerned had I considered the fact that the defendant's actions were cruel towards the victim. Even if I hadn't considered that aggravating factor, I still would have imposed a sentence that would have been identical to the one that I imposed today.

> And the reason for that is the number of prior offenses, the number of prior offenses that are related to alcohol, and the number of prior offenses that are related to assaultive conduct, and the number of prior offenses that were related to both alcohol and assaultive conduct.

(Id. at pp. 22-23)

### iii.  The Appellate court decision

On direct appeal, the appellate court found no bias on behalf of the trial court as follows:

> Defendant has presented no evidence that the trial judge was biased. As to the issue of an eight-person jury, the trial court simply recognized the obvious fact that a twelve-person jury was required only if the prosecutor wished to pursue all of the original allegations against defendant. The trial judge made clear at the time of his comments that it was entirely up to the state whether to proceed with the original charges or to dismiss any of the allegations of prior convictions. The trial court noted that it had made arrangements to use a different courtroom if a jury of twelve was required because the judge's regularly assigned courtroom was inadequate for such a

proceeding...Contrary to the defendant's claim, the trial judge had not become an advocate for the state.

As to the sentencing issue...the trial court made clear that it was not using the cruelty finding as a basis for increasing defendant's sentence. Rather, it expressly found that defendant's criminal history alone warranted the sentence that was imposed, which although aggravated, was less than the maximum possible. The trail court's comments at sentencing reflect a careful consideration of the circumstances of the offense as well as other aggravating and mitigating factors, not judicial bias.

(Arizona Appellate Court decision, pp. 11-12) The appellate court also noted that "[e]ven if the trial court erred in finding the offense to be 'cruel,' it could still consider the brutal nature of the offense as an aggravating circumstance." (Id. at p.12 n.3)

### iv. Discussion

"[A] fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin,* 421 U.S. 35, 46 (1975) (citation omitted). The Supreme Court has recognized that "the probability of actual bias on the part of the judge...is too high to be constitutionally tolerable" in situations where "the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him."*Id.* (footnotes and citations omitted); *see also Bracy v. Gramley,* 520 U.S. 899, 905-906 (1997) ("...the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal...before a judge with no actual bias against the defendant or interest in the outcome of his particular case.") (citations omitted).

As set forth *supra* at <u>iii</u>, the appellate court evaluated the trial court's contemporaneous comments concerning the decision to empanel an eight-person jury and its sentencing decision. The appellate court stressed that the trial court emphasized that the decision to dismiss the allegations of priors was entirely up to the state and arrangements had been made to proceed in a larger courtroom if a twelve-person jury was necessary. The trial court's comment that it was easier to convince eight instead of twelve people in no way supports the conclusion that the judge harbored actual bias against Petitioner or that he had an interest in the outcome of the particular case given that under the circumstances of this case, allowing the state to dismiss two allegations of prior felonies and proceed before an eight-

person jury inured to Petitioner's benefit by reducing the maximum possible sentence of imprisonment by approximately 12 years.  (*See* Answer, Ex. U, pp. 6-7 (noting the dismissal of allegations of two priors would reduce the maximum possible sentence from 35 years to 23.25 years)

Additionally, as the appellate court pointed out, the sentence actually imposed did not support a finding of judicial bias given the trial court's stated reasons on the record supporting such sentence and given that Petitioner was sentenced to less than the maximum possible time.   The sentence imposed was also less than that recommended in the pre-sentence report and by the prosecutor.   There being no showing on the instant record that Petitioner was denied "a fair trial in a fair tribunal...before a judge with no actual bias against the defendant or interest in the outcome of his particular case," *Bracy,* 520 U.S. at 904, the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

2.  Claim Two: Instruction on reckless manslaughter

Petitioner claims that the trial court violated the Double Jeopardy Clause when it instructed the jury that reckless manslaughter was a lesser-included offense of second-degree murder. (Petition, p. 6)

a.  Exhaustion and Procedural Default

Respondents argue that the claim is procedurally defaulted because it was not fairly presented as a federal constitutional issue before the state court.

On  appeal, Petitioner argued that his conviction should be reversed because reckless manslaughter is not a lesser-included offense of second degree murder under Arizona law. (Answer, Ex. K, pp. 7-8) Petitioner did not assert any violation of the federal Double Jeopardy Clause before the state court, nor did he cite federal cases or state cases that engaged in a federal constitutional analysis of the issue. *See Fields,* 401 F.3d at 1020-1021. Consequently, Respondents are correct that Petitioner failed to fairly present Claim Two in

state court.  *Id.*  Further, Petitioner is now barred pursuant to Rule 32.2(a) of the Arizona Rules of Criminal Procedure from returning to state court and, thus, Petitioner is procedurally barred from pursuing such claim here.  *See Coleman,* 501 U.S. at 732, 735 n.1.  *See also Franklin*, 290 F.3d at 1230-1231.

### b.  Respondents' alternative argument on the merits

Respondents are also correct that Petitioner's Claim Two lacks merit because it involves an issue of state law and does not implicate the Double Jeopardy Clause.

After hearing argument from the parties, the trial court decided to instruct the jury on two theories of lesser-included offenses of second degree murder (1) sudden-quarrel manslaughter and (2) reckless manslaughter.[10]  (Answer, p.33 & Ex. V, pp. 127-128)

In rejecting Petitioner's appeal, the Arizona Court of Appeals held that as a matter of Arizona law, reckless manslaughter is a lesser-included offense of knowing second degree murder.  (Answer, p. 33 & Arizona Appellate Court decision, pp. 5-7) The appellate court further found that the reckless manslaughter instruction in Petitioner's case was supported by the evidence.  (Id.)

Respondents are correct that the Double Jeopardy Clause does not apply to the instant claim.   The Double Jeopardy clause "forbids successive prosecution and cumulative punishment for a greater and lesser included offense."  *Brown v. Ohio*, 432 U.S. 161, 169 (1977) (footnote omitted).  Here, where Petitioner was convicted of only the lesser offense in one prosecution, there is no Double Jeopardy violation.   *See id.* Petitioner's Claim Two, therefore, is without merit.

---

[10]The record reflects that although Petitioner submitted a proposed jury instruction on reckless manslaughter, it was only submitted "in the event that the Court was inclined to give those lesser includes [sic], not that I wanted them given...I don't want them given.  I don't want lessor [sic] includeds given."  (Answer, Ex. V, p.18)

3.  Claim 3: Ineffective assistance of trial, appellate, and post-conviction counsel

a.  Exhaustion and Procedural Default

In his Petition for Post-Conviction Relief filed by counsel and his Pro Per Supplemental Petition for Post-Conviction Relief, Petitioner claimed that trial counsel was ineffective in failing to insist upon creating a record of attorney objections to juror questions; in failing to reasonably assess the likelihood of a guilty verdict; in failing to properly advise Petitioner to take a proffered plea; and in failing to obtain all relevant documents for trial. (Answer, Ex. O, P) The trial court denied relief in separate minute entries. (Answer, Ex. Q, R) Petitioner concedes that he did not seek review of these decisions with the Arizona Court of Appeals.  (Petition, p.2)

It is well-settled that a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845.  Therefore, Petitioner has failed to fairly present his claim to the state court.  Moreover, because Petitioner has no available state court remedies to exhaust his claim now, s*ee* Ariz.R.Crim.P. 32.2, 32.4(a), Petitioner's claim is procedurally barred. Petitioner has not established cause or prejudice for failing to present such claims to the state court.

Petitioner argues that he submitted the issue of ineffective assistance of appellate counsel to the Arizona Court of Appeals during the direct appeal when he filed a Motion for Change of Appellate Counsel which that court denied.   (Petitioner's Response to Respondents' Supplemental Pleadings, p.7 & Ex. 1) Review of Petitioner's post conviction petitions reveal that he did not raise the issue of ineffective appellate counsel therein.

In Arizona, a claim of ineffective assistance of appellate counsel  is encompassed within a Rule 32.1 post-conviction proceeding. *State of Arizona v. Herrera,* 905 P.2d 1377 (Ariz. App. 1995).  "Construing Rule 32.1 to include claims of ineffective assistance of appellate counsel is consistent with the stated purpose [of] the Arizona Rules of Criminal Procedure in consolidating state post-conviction procedures 'into a single comprehensive

remedy.' Rule 32.1 cmt. (1987).  Thus, even if we were to identify an alternate vehicle for advancing claims of ineffective assistance of appellate counsel in this court, recognizing an exception to Rule 32 would frustrate a principal goal of that rule." *Id.* at 1381-1382. Therefore, to the extent that Petitioner attempted to raise ineffective assistance of appellate counsel in the course of his direct appeal, that claim was not raised in a procedurally appropriate manner.  *Id.*  Where an ineffective assistance of counsel claim is not presented to the state court in the manner that state law requires, that claim has not been exhausted for purposes of federal habeas review.  *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).  *See also Moormann v. Schriro,* 426 F.3d 1044, 1056, (9th Cir. 2005), *petition for cert. filed* __ U.S. __, 74 U.S.L.W. 3533 (March 13, 2006),  (new allegations of ineffective assistance of counsel not previously raised before the state court cannot be addressed on habeas review); *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (same).  Therefore, Petitioner failed to fairly present the state court with his claim that appellate counsel was ineffective. Petitioner has no available state remedies, and his claim is now procedurally barred.

Petitioner contends that he did not present the claim to the state court, other than superior court, because he "was lacking resources."  (Petition, p.7) On the instant record, such explanation alone does not show that external forces prevented Petitioner from presenting the facts to the state court.  *See Martinez-Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir. 1996) (cause is an external impediment such as government interference). Therefore, Petitioner has failed to show cause for the procedural default.

Respondents are also correct that there is no cognizable claim for ineffective assistance of post-conviction counsel. (*See* Answer, p.36)  Section 2254(i) expressly states that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Moreover, the United States Supreme Court has held that "[t]here is no constitutional right to an attorney in state-post conviction proceedings....Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman,* 501

U.S. at 752.  Thus, Petitioner's claim of ineffective assistance of counsel during the post-conviction relief proceeding fails.

b.  Respondents' alternative argument on the merits

In his Petition for Post-Conviction Relief, Petitioner alleged ineffective assistance of trial counsel for failing to make a record of attorney objections to juror questions for the reason that there were approximately nineteen instances in which juror questions were asked without a recorded side-bar record.  (Answer, Ex. O, p.6) The record did contain the original written questions from the jurors and post-conviction relief counsel noted that "there are instances where the Court took considerable time to allow counsel to record objections.  If indeed the Court had indicated to counsel that objections could be recorded and trial counsel did not take advantage of that invitation, then, in that respect, trial counsel would have been ineffective for failing to create an adequate record for review."  (Id.)

Petitioner argued that trial counsel was ineffective in failing to assess a guilty verdict and in failing to advise Plaintiff to take a proffered plea.  Petitioner's Petition for Post-Conviction Relief, filed through counsel, indicated that "Defendant has alleged that during the course of the trial, the State tendered a plea offer that called for a stipulated term of imprisonment of five years...The record is totally devoid of any information concerning whether a plea offer was made, the terms of that offer or any discussion concerning the offer."  (Id. at p.11)

Petitioner argued in his Pro Per Supplemental Petition for Post-Conviction Relief that trial counsel was ineffective in failing to provide him with copies of documents during trial, specifically that trial counsel did not obtain grand jury transcripts "at the outset of this case." (Answer, Ex. P, p. 2)

In rejecting Petitioner's claims of ineffective assistance of trial counsel, the trial court held:

> There is an adequate record regarding jury questions during trial with both parties being provided with the opportunity to put anything on the record and secondly this Court will not intervene in plea negotiations between the parties.

\*\*\*

> Defendant asserts that his attorneys [sic] failure to review the Grand Jury Transcript should be considered incompetent representation.  The Defendant cites no case law in support of his contentions.  This Court has reviewed the Grand Jury Transcript in this case and finds that it contains no exculpatory evidence.  Absent specific facts and case law to support Defendant's claim, [it is ordered summarily denying the claim.]

(Answer, p. 37 quoting Ex. R and Q respectively) (bracketed text appears in Respondent's Answer)

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims.  To establish that his trial counsel was ineffective under *Strickland,* Petitioner must show: (1) that his counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced Petitioner's defense.  *Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998) (citing *Strickland,* 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious...that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms.  *Strickland,* 466 U.S. at 687-688.  The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable.  *Babbit v. Calderon,* 151 F.3d 1170, 1173 (9th Cir. 1998).  In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland,* 466 U.S. at 690.  The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation."  *Ortiz,* 149 F.3d at 932 (quoting *Hensley v. Crist,* 67 F.3d 181, 184 (9th Cir. 1995)).  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986).  Additionally, "[a] fair assessment of

attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.

Even where counsel's performance was deficient, Petitioner must also establish prejudice in order to prevail on his ineffective assistance of counsel claim. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Id.* at 697-700.

It is well-settled that "[c]onclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg,* 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland,* 466 U.S. at 690 (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment"); *Ortiz,* 149 F.3d at 933 (rejecting ineffective assistance of counsel claim where petitioner failed "to indicate how he was prejudiced by counsel's failure" to conduct cross-examination on a specific issue); *United States v. Berry,* 814 F.2d 1406 (9th Cir. 1987) (defendant was not denied ineffective assistance of counsel for failure to call out-of-state witnesses absent indication of what witnesses would have testified to or how their testimony would have changed outcome of proceeding); *Cranford v. Sumner,* 672 F.Supp. 453, 457 (D.Nev. 1987) ("Aside from the bald allegation that his attorney should have raised this claim but did not, the petitioner has failed to demonstrate how his attorney's performance fell below the reasonable level of professional competence required by *Strickland* .")

Petitioner herein has not demonstrated any basis on which trial counsel should have objected to the juror questions or should have requested the grand jury transcripts nor has Petitioner shown any resulting prejudice. Additionally, the record is clear that during trial outside the presence of the jury, the trial court inquired whether a manslaughter charge was appropriate and went on to discuss the possibility of a plea offer. (Answer, Ex. B, p.5). The trial court further stated that "[c]learly it's Mr. Horling's [the prosecutor's] call. He can make an offer...but I assume that the negotiations have been completed." (Id.) Defense counsel responded: "Judge, I'm open to any offers. I am in the trial because nothing was offered except second degree murder. Mr. Hurley basically had no incentive. There was an offer to stipulate to the presumptive, but in my opinion that was no offer, a second degree murder charge and stip to the presumptive. I am open to hearing offers, but the ball is in Mr. Horling's court." (Id. at pp. 5-6) Respondents aptly point out that "trial counsel's decision to go to trial in this case was very effective assistance because Petitioner was not convicted of second-degree murder, but rather of manslaughter, a lesser offense." (Answer, p. 38)

Accordingly, review of the instant record supports the conclusion that the state court decision was not based on an unreasonable determination of fact or an unreasonable application of *Strickland.* Nor has Petitioner cited instances demonstrating that appellate counsel's conduct fell below an objective standard of reasonableness and that Petitioner was prejudiced by such conduct. *Smith v. Robbins,* 528 U.S. 259, 285 (2000) (the *Strickland* standard applies to claims of ineffective assistance of appellate counsel). Therefore, Petitioner's claim of ineffective assistance of trial and appellate counsel is without merit.

### 4. Ground Four: violation of privilege against self-incrimination

Petitioner claims that his privilege against self-incrimination was violated when he told officers "why" he was in handcuffs. (Petition, p.8) According to Petitioner, he did not receive a *Miranda* warning before he made the statement. (Id.)

### a.  Exhaustion and Procedural Default

Petitioner concedes that he did not raise this claim on direct appeal or in his petitions for post-conviction relief.  (Petition, p.8; *see also* Answer, p. 39 (pointing out that Petitioner did not raise this issue before the state court))  Therefore, Petitioner has not fairly presented his Fifth Amendment claim to the state court.  *See O'Sullivan,* 526 U.S. at 845.  Petitioner asserts that the failure to raise the claim was "due to ineffectiveness of assistance counsel [sic]...I attempt to allege the incident as to the fourth amendment claims...and be raise in my appeal...but the attorneys just rush through the proceedings...trial and appeal."  (Petition, p.8) (ellipses in original)

An allegation of ineffective assistance of counsel as cause for procedural default "is *itself* an independent constitutional claim" and as such must be fairly presented to the state court.  *Edwards,* 529 U.S. at 451.  Thus, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."  *Id.* at 453.  However, just as with other claims, the procedural default of an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim may "be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Id.*  (emphasis in original).  As discussed above, Petitioner failed to fairly present an ineffective assistance of counsel claim to the state court and Petitioner failed to establish cause for such default.  Further, the claims of ineffective assistance of counsel Petitioner advanced in his post-conviction proceedings before the trial court never mentioned ineffective assistance of counsel for failure  to raise the *Miranda* issue.  Thus, Petitioner has failed to establish cause for the procedural default herein.

### b.  Respondents' alternative argument on the merits

In pre-trial motions, Petitioner through defense counsel raised the issue of voluntariness of his statements and the trial court held a hearing on the matter.  At that

- 27 -

hearing, Corporal Bartel[11] testified that he and Officer Johnson arrested Petitioner on the night of the incident at Petitioner's home. (Answer, Ex. H, p.5) Petitioner "was agitated. He was yelling profanities wanting to know what was going on when he saw me." (Id. at p.6) Officer Bartel observed that Petitioner had been drinking alcohol. (Id. at pp. 6-7) The officer smelled the odor of alcohol and noticed that Petitioner's eyes were watery and bloodshot. (Id.) Petitioner was coherent and he was able to walk and stand upright. (Id.) Given Petitioner's state of intoxication, Officer Bartel would not have let Petitioner drive had Petitioner not been under arrest. (Id. at pp. 19-20) On the way to the police station after the arrest, Petitioner and Officer Bartel rode in the backseat of the patrol car. (Id. at p.8) They were separated by a metal screen. (Id.) Officer Bartel sat in the back compartment with the police dog "due to the fact that Mr. Hurley was agitated." (Id.) The officers had not yet advised Petitioner of his *Miranda* warnings and they did not ask Petitioner any questions while en route to the police station.[12] (Id. at p.9)

> Officer Bartel testified that while in the police car, Petitioner
>
> said he knew why he was in handcuffs because he had beat that guy, unquote. Hurley said, "I did it."
>> He admitted it.
>> "You have always been straight with me, so I won't lie to you. I did it but I had my reasons."
>> Hurley went quiet for a few seconds then asked me, "If you drank with a guy and he took off your pants what would you do."
>> I didn't say anything to Hurley. He then said something to the effect of, "I remember that guy I got him back."

---

[11]Respondents spell the Corporal's name as: "Bartell." (Answer, p.40) The transcript of the pre-trial hearing uses "Bartel." (Answer, Ex. H, p. 3)

[12]According to Respondents, the trial transcript indicates that Petitioner had received *Miranda* warnings prior to arriving at the station and prior to making any statements. (Answer, p. 40 n. 11 citing Ex. A, p. 101) "However, because the trail court's ruling on admissibility of the statements was based on what it heard at the voluntariness hearing, Respondents, for the purposes of argument, will assume that Bartell [sic] did not give Petitioner the *Miranda* warnings until they reached the police station." (Answer, p.40 n.11) Therefore, consideration of Claim Four is based on the testimony presented at the pre-trial voluntariness hearing.

He didn't state anything else until we got to the police department.

(Id. at pp. 14-15) At the police station, Officer Bartel read Petitioner the *Miranda* advisory. (Id. at pp. 9-11, 17) Thereafter, Petitioner agreed to talk with the Officer.  (Id.)

The trial court found that Petitioner's "statements in the vehicle were not the result of any custodial interrogation, that they were made solely by the defendant as a result of any questioning.  Therefore, *Miranda* is not appropriate or necessary because they are not custodial interrogation.  Although he was in custody, he was not being interrogated. Therefore, those statements are inadmissible [sic]."[13]  (Id. at p. 25)

It is well-settled that for *Miranda* to apply, the defendant must be subjected to custodial interrogation.  *Beaty*, 303 F.3d at  991 (citing *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)).  The United States Supreme Court has defined interrogation under *Miranda* as encompassing "not only...express questioning, but also... any words or actions on the part of the police (other than those normally attendant to arrest and custody)  that the police should know are reasonably likely to elicit an incriminating response from the suspect...A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation."  *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). The facts developed during the  pre-trial motions hearing support the state court's finding that Petitioner's statements did not result from interrogation but were instead spontaneous. Officer Bartel testified that he did not question Petitioner in the squad car nor did the Officer's conduct amount to any functional equivalent to interrogation. Therefore, the state trial court's ruling was not contrary to, or an unreasonable application of, clearly established federal law.  Nor did the state court's proceeding result in a decision that was based on an

---

[13]Respondents point out that "[t]he transcript contains an obvious clerical error, with the trial court finding the statements were 'inadmissible.' (R.T. 5/8/98, at 25) That, of course is contrary to its ruling that *Miranda* did not apply because Petitioner was not being interrogated.  And the statements were admitted at trial without further comment." (Answer, p. 40 n.12)

unreasonable determination of the evidence presented.  Because Petitioner's claim is without merit, he is not entitled to federal habeas relief.

## III.  CONCLUSION

The Magistrate Judge recommends that the District Court deny Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) for the reasons that Petitioner's claims are procedurally defaulted and, alternatively, Petitioner's claims lack merit.

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: CV-03-1285-PCT-SRB.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 20th day of June, 2006.

_____
Héctor C. Estrada
United States Magistrate Judge